[No. H033239. Sixth Dist. Dec. 19, 2008.]

BOARD OF PAROLE HEARINGS, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
DAVID PORTEE, Real Party in Interest.

## COUNSEL

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Anya M. Binsacca, Jessica N. Blonien and Amber N. Wipfler, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Edward Mahler for Real Party in Interest.

## OPINION

**ELIA, J.**—In this original proceeding, this court is asked to decide whether an order of the Santa Clara County Superior Court (respondent court) impermissibly limits the discretion of the Board of Parole Hearings (the Board) when conducting real party in interest David Portee's (Portee) parole consideration hearing. The Board contends that in ordering the Board at Portee's new hearing to "explain what instances of [Portee]'s commitment offense would not qualify for invocation of any unsuitability criteria which may be used to deny him parole," respondent court exceeded its jurisdiction. For reasons set forth below, we agree with the Board. Accordingly, we grant the petition for writ of mandate.

### Factual and Procedural Background[1]

After his initial parole consideration hearing, Portee filed a petition for writ of habeas corpus challenging the Board's decision to deny him parole. On

---

[1] It is unnecessary to recite the facts of Portee's commitment offense or summarize the proceedings of Portee's initial parole consideration hearing other than to note that Portee is serving an indeterminate sentence of 22 years to life following his 1982 convictions of two counts of kidnap for robbery, two counts of rape with force while armed with a deadly weapon, and assault with intent to commit rape.

November 16, 2007, in response to Portee's petition, respondent court issued an order to show cause (OSC) why Portee was not entitled to the relief he sought. In the OSC, respondent court noted that the "paramount issue presented by [Portee]'s case is whether [respondent] Court will be required to order a hearing due to the fact that so many 'indiscernables' [*sic*] and 'malfunctions' in the transcript render the record insufficient to afford [Portee] the judicial review he is entitled."

Respondent court directed the Board to file a return on the merits and "explain what instances of [Portee]'s commitment offense would not qualify for invocation of the unsuitability criteria used to deny him parole."

The Board filed a return in which the Board admitted "that the poor recording of [Portee]'s parole consideration hearing led to an incomplete transcript which precludes proper judicial review." The Board conceded that the proper course of action was for respondent court to "remand the case back to the Board so that the Board can hold a new hearing in accordance with due process." The Board stated that Portee would receive a new parole consideration hearing on April 28, 2008.[2] In addition, instead of responding to respondent court's order to explain what instances of Portee's commitment offense would not qualify for invocation of the unsuitability criteria used to deny him parole, the Board responded that its decision "was supported by some evidence in the record, including the egregious nature of the commitment offense"; Portee's "unstable social and criminal history"; Portee's "failure to upgrade educationally or vocationally"; and Portee's "lack of viable parole plans."

Portee submitted a denial in which he set forth the evidence with which the Board was presented at the parole consideration hearing and pointed out that there was no factual support for many of the reasons the Board had cited in denying him parole. Portee brought respondent court's attention to the fact that in its return the Board had failed to set forth any justification warranting a refusal to set a parole date. Portee suggested that the matter be remanded back to the Board with direction to set a parole date. Alternatively, Portee suggested that respondent court issue an OSC expressly directing the Board

---

[2] In its return the Board stated that it would hold a new parole consideration hearing on "April 28, 2007." However, since the return was filed with respondent court on December 17, 2007, we must assume that this was a typographical error and should have been April 28, 2008.

to " 'explain what instances of [Portee]'s commitment offense would not qualify for invocation of the unsuitability criteria used to deny parole.' "

On July 10, 2008, respondent court issued its decision. Respondent court noted that it had issued an OSC on both procedural and substantive grounds.[3] Specifically, respondent court observed that the Board had not addressed the substantive issue and by failing to do so the Board had "defaulted and conceded their merits."

Nevertheless, respondent court ordered the Board to conduct another parole suitability hearing "at which [the Board] shall explain what instances of [Portee's] commitment offense would not qualify for invocation of any unsuitability criteria which may be used to deny him parole."

Thereafter, on August 11, 2008, just days before Portee was scheduled to receive another hearing, the Board petitioned this court for a writ of mandate vacating respondent court's instruction to the Board.[4]

To permit further consideration of the issues raised by the petition for writ of mandate, on August 15, 2008, this court ordered that respondent court's order be stayed until further notice from this court. The limited stay did not preclude the Board from conducting the parole suitability hearing scheduled for August 20, 2008. By the same order, pursuant to *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 180 [203 Cal.Rptr. 626, 681 P.2d 893], this court notified the parties that it was considering issuing a peremptory writ of mandate in the first instance regarding respondent court's July 10, 2008 order. We allowed Portee to serve and file on or before September 24, 2008, points and authorities in opposition to the petition. Further, we informed the Board that if Portee filed opposition, the Board could reply within 10 days.

Having received both opposition and a reply we turn to the merits of this case.

### Discussion

At the outset, briefly, we set out some details of the regulatory scheme under which the Board operates as set forth in the California Supreme

---

[3] We take this to mean that respondent court felt that the Board had not adequately justified its decision in line with respondent court's November 16, 2007 order.

[4] It appears that the Board delayed the April 28, 2008 hearing until August 20, 2008.

Court's recent decision in *In re Lawrence* (2008) 44 Cal.4th 1181 [82 Cal.Rptr.3d 169, 190 P.3d 535] (*Lawrence*).

█ "The applicable statutes provide that the Board is the administrative agency within the executive branch that generally is authorized to grant parole and set release dates. [Citations.] The Board's parole decisions are governed by [Penal Code] section 3041 and title 15, section 2281 of the California Code of Regulations. [Citation.] Pursuant to statute, the Board 'shall normally set a parole release date' one year prior to the inmate's minimum eligible parole release date, and shall set the date 'in a manner that will provide uniform terms for offenses of similar gravity and magnitude *in respect to their threat to the public* . . . .' [Citation.] Subdivision (b) of [Penal Code] section 3041 provides that a release date must be set 'unless [the Board] determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the *public safety* requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.' [Citations.]" (*Lawrence, supra,* 44 Cal.4th at pp. 1201–1202, fn. omitted.)[5]

█ "Title 15, section 2281 of the California Code of Regulations sets forth the factors to be considered by the Board in carrying out the mandate of the statute. The regulation is designed to guide the Board's assessment of whether the inmate poses 'an unreasonable risk of danger to society if released from prison,' and thus whether he or she is suitable for parole. [Citation.] The regulation also lists several circumstances relating to *unsuitability* for parole—such as the heinous, atrocious, or cruel nature of the crime, or an unstable social background; and *suitability* for parole—such as an inmate's rehabilitative efforts, demonstration of remorse, and the mitigating circumstances of the crime. [Citation.]" (*Lawrence, supra,* 44 Cal.4th at pp. 1202–1203, fns. omitted.)[6]

---

[5] In *Lawrence,* the petitioner had committed her crime before November 8, 1978. Accordingly, title 15, section 2281 of the California Code of Regulations governed her parole suitability. (*Lawrence, supra,* 44 Cal.4th at p. 1202, fn. 5.) Since Portee was convicted in 1982, but he was not convicted of murder, title 15, section 2281 of the California Code of Regulations governs.

[6] The factors that tend to show unsuitability for parole are (1) the commitment offense was carried out in an "especially heinous, atrocious or cruel manner," (2) a "[p]revious [r]ecord of [v]iolence," (3) "a history of unstable or tumultuous relationships with others," (4) "[s]adistic [s]exual [o]ffenses," (5) "a lengthy history of severe mental problems related to the offense," and (6) "[t]he prisoner has engaged in serious misconduct in prison or jail." (Cal. Code Regs., tit. 15, § 2281, subd. (c)(1)–(6).) The factors supporting a finding that the inmate committed the offense in an especially heinous, atrocious, or cruel manner include the following: (A) multiple victims were attacked, injured, or killed in the same or separate incidents; (B) the offense was carried out in a dispassionate and calculated manner, such as an execution-style

In *In re Rosenkrantz* (2002) 29 Cal.4th 616 [128 Cal.Rptr.2d 104, 59 P.3d 174], the California Supreme Court held that the Board must consider the statutory factors concerning parole suitability set forth in Penal Code section 3041 and the Board's regulations. (29 Cal.4th at p. 664.)[7] Furthermore, "because due process of law requires that a decision considering such factors be supported by some evidence in the record, the [Board]'s decision is subject to judicial review to ensure compliance with this constitutional mandate." (29 Cal.4th at p. 664.)

More specifically, "because an inmate's due process right 'cannot exist in any practical sense without a remedy against its abrogation,' " a decision of the Board is subject to judicial review "to ensure that the decision reflects 'an individualized consideration of the specified criteria' and is not 'arbitrary and capricious.' [Citation.]" (*Lawrence, supra*, 44 Cal.4th at p. 1205.)

However, " 'due consideration' of the specified factors requires more than rote recitation of the relevant factors with no reasoning establishing a rational nexus between those factors and the necessary basis for the ultimate decision—the determination of current dangerousness." (*Lawrence, supra*, 44 Cal.4th at p. 1210.)

Initially, it is important to note that we are concerned only with that part of respondent court's order that instructs the Board to explain what "instances of [Portee's] commitment offense would not qualify for invocation of any unsuitability criteria which may be used to deny parole." The Board argues that a new hearing comporting with due process is the only relief to which Portee is entitled. Further, the Board asserts that respondent court's instructions "appear to be a roundabout attempt to prevent the Board from considering Portee's commitment offense when determining parole suitability." The Board points out that this court has repeatedly held that the respondent court exceeds its authority when it precludes the Board from considering all relevant and reliable information; further, that it is impossible for the Board to follow this order without engaging in some form of comparative analysis,

---

murder; (C) the victim was abused, defiled, or mutilated during or after the offense; (D) the offense was carried out in a manner that demonstrates an exceptionally callous disregard for human suffering; and (E) the motive for the crime is inexplicable or very trivial in relation to the offense. (Cal. Code Regs., tit. 15, § 2281, subd. (c)(1).)

[7] In *Rosenkrantz*, the California Supreme Court discussed title 15, section 2402 of the California Code of Regulations. Title 15, sections 2281 and 2402 are identical. (*Lawrence, supra*, 44 Cal.4th at p. 1202, fn. 5.)

which the California Supreme Court in *In re Dannenberg* (2005) 34 Cal.4th 1061, 1071 [23 Cal.Rptr.3d 417, 104 P.3d 783], held the Board is not required to do.[8]

Initially, we note that in *In re Weider* (2006) 145 Cal.App.4th 570, 590–591 [52 Cal.Rptr.3d 147] (*Weider*), *In re DeLuna* (2005) 126 Cal.App.4th 585, 599–600 [24 Cal.Rptr.3d 643] (*DeLuna*), and *In re Bettencourt* (2007) 156 Cal.App.4th 780, 807, footnote 8 [67 Cal.Rptr.3d 497] (*Bettencourt*), this court found that to the extent the superior court's orders precluded the Board from considering all relevant and reliable information, the superior court exceeded its jurisdiction.

In *Weider*, the superior court in ordering a new hearing directed that the Board could not find the parole applicant unsuitable based on the same evidence that had been presented at the earlier hearing and could consider only new evidence to warrant such a finding. (*Weider, supra*, 145 Cal.App.4th at pp. 574, 583.) In *DeLuna*, the superior court, in remanding the matter for further consideration " 'precluded' the Board 'from relying on any of the purported reasons it previously articulated . . . .' " (*DeLuna, supra*, 126 Cal.App.4th at p. 599.) In *Bettencourt*, having reached the conclusion that some evidence supported the Board's finding that the inmate was unsuitable for parole based on the factors of the commitment offense, past criminal history, social history, institutional behavior, and psychological evaluations and behavior at the parole hearing, this court declined to address the Board's additional contention that the superior court improperly directed the Board to hold a new hearing in a manner contrary to law. (*Bettencourt, supra*, 156 Cal.App.4th at p. 807.) However, in a footnote, we observed that previously this court had ruled that the trial court exceeds its jurisdiction when the court precludes the Board from considering all relevant, reliable information. (*Ibid.*)

In this case, respondent court's order in no way prevents or limits the Board from finding Portee unsuitable based on the same evidence and

---

[8] In *In re Dannenberg, supra*, 34 Cal.4th 1061, the California Supreme Court rejected the inmate's contention that the Board must schedule an indeterminate life inmate's release on parole, within the parameters of uniform terms for similar offenses, unless it finds the callousness and brutality of a particular inmate's offense or other indicia of his or her dangerousness, so extreme that the case falls outside the uniform-term matrices set forth in the Board's regulations. (*Id.* at pp. 1070–1071.) In so doing, the *Dannenberg* court held the Board did not have to engage in comparative analysis before concluding that the particular facts of the inmate's offense made it unsafe, at that time, to fix a date for his or her release. (*Id.* at p. 1071.)

findings articulated at the previous hearing. Nor does the order place restrictions on the Board as to the evidence it may consider or dictate how it should evaluate that evidence. Pursuant to respondent court's order the Board may consider all relevant and reliable evidence and may base a finding on old evidence, new evidence or a combination of the two. Respondent court's order asks the Board to consider the circumstances of the commitment offense and articulate the reasons for its findings.

■ Nevertheless, respondent court's order asks the Board to focus on something that is irrelevant to a determination of future dangerousness. We sympathize with the frustration of respondent court, but the order is asking for a full explanation of what is not relevant. The Board's mandate requires only that the Board consider "[a]ll relevant, reliable information" (Cal. Code Regs., tit. 15, § 2281), not information that has no bearing on the Board's decision.[9]

If, for example, respondent court had ordered the Board to isolate the parts of Portee's commitment offense that qualified for invocation of an unsuitability factor or factors and state the nexus between the factor or factors and the ultimate decision of current dangerousness, we could have upheld respondent court's order. This is so because then respondent court would have been requiring the Board to give its "reasoning establishing a rational nexus between those factors and the necessary basis for the ultimate decision—the determination of current dangerousness." (*Lawrence, supra*, 44 Cal.4th at p. 1210.)[10] Unfortunately, respondent court's order did not so do.

---

[9] The factors that tend to show suitability for parole are (1) the absence of a juvenile record, (2) "reasonably stable relationships with others," (3) signs of remorse, (4) a crime committed as the result of significant stress in the prisoner's life, (5) battered woman syndrome, (6) the lack of "any significant history of violent crime," (7) "[t]he prisoner's present age reduces the probability of recidivism," (8) "[t]he prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release," and (9) the inmate's "[i]nstitutional activities indicate an enhanced ability to function within the law upon release." (Cal. Code Regs., tit. 15, § 2281, subd. (d)(1)–(9).) Nothing about the commission of the commitment offense per se would be relevant in finding one of these factors.

[10] Frankly, in light of *Lawrence, supra*, 44 Cal.4th 1181, this order would have been a longhand way of saying, proceed in accordance with due process. After *Lawrence*, due process requires that "under the statute and governing regulations, the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prisoner remains a danger to the public. It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." (*Lawrence, supra*, at p. 1212.)

## *Disposition*

Let a peremptory writ of mandate issue commanding the superior court to vacate its order of July 10, 2008, directing the Board of Parole Hearings to "explain what instances of [Portee's] commitment offense would not qualify for invocation of any unsuitability criteria which may be used to deny [Portee] parole," and to reconsider its ruling in accordance with the views expressed in this opinion. The temporary stay order is vacated.

Premo, Acting P. J., and Duffy, J., concurred.